UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JEAN COLEMAN,

                      Plaintiff,

         v.

ANDREW M. SAUL,[1] Commissioner of
  Social Security,

                      Defendant.
_____

**DECISION
and
ORDER**

**18-CV-109F**
(**consent**)

APPEARANCES:                LAW OFFICES OF KENNETH HILLER, PLLC
                                  Attorneys for Plaintiff
                                  KENNETH R. HILLER,
                                  AMY C. CHAMBERS, and
                                  IDA M. COMERFORD, of Counsel
                                  6000 North Bailey Avenue,
                                  Suite 1A
                                  Amherst, New York  14226

                                  JAMES P. KENNEDY, JR.
                                  UNITED STATES ATTORNEY
                                  Attorney for Defendant
                                  Federal Centre
                                  138 Delaware Avenue
                                  Buffalo, New York  14202
                                        and
                                  BENIL ABRAHAM,
                                  Special Assistant United States Attorney, of Counsel
                                  Social Security Administration
                                  Office of General Counsel
                                  26 Federal Plaza
                                  Room 3904
                                  New York, New York  10278
                                        and

---

[1] Andrew M. Saul became Commissioner of the Social Security Administration on June 17, 2019, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

DENNIS J. CANNING,
ANNE M. ZIEGLER, and
FRANCIS D. TANKARD,
Special Assistant United States Attorneys, of Counsel
Social Security Administration
Office of General Counsel
601 East 12th Street
Room 965
Kansas City, Missouri  64106

## JURISDICTION

On June 19, 2018, the parties to this action, consented pursuant to 28 U.S.C. § 636(c) to proceed before the undersigned.  (Dkt. 9).  The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on August 13, 2018 (Dkt. 13), and by Defendant on November 13, 2018 (Dkt. 19).

## BACKGROUND

Plaintiff Jean Coleman ("Plaintiff"), brings this action under the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's application filed with the Social Security Administration ("SSA"), on June 12, 2014, for Social Security Disability Insurance benefits under Title II of the Act ("SSDI" or "disability benefits").  AR[2] at 65, 143-44.  Plaintiff alleges she became disabled on March 11, 2014, AR at 143, 212 based on bulging discs, depression, diabetes II, epilepsy, back pain, neuropathy, left foot drop, chronic day time sleepiness, high cholesterol, sleep apnea, trouble concentrating, and highly disorganized.  AR at 216.  Plaintiff's application initially was denied on October 7, 2014.  AR at 65-81.  At Plaintiff's timely request, on April 4, 2017, a hearing ("the administrative hearing"), was held in Jamestown, New York, by video

---

[2] References to "AR" are to the page of the Administrative Record electronically filed by Defendant on May 14, 2018 (Dkt. 6).

2

conferencing before administrative law judge Timothy Belford ("the ALJ"), located in Lawrence, Massachusetts. AR at 28-64. Appearing and testifying at the administrative hearing were Plaintiff, represented by non-attorney D.J. Moore, with Plaintiff's mother, Anna Coleman, and vocational expert ("VE") James Sarno ("VE Sarno") also appearing and testifying. *Id.*

On June 14, 2017, the ALJ issued a decision denying Plaintiff's claim. AR at 7-27 ("the ALJ's decision"). Plaintiff requested review of the ALJ's decision by the Appeals Council which, on November 24, 2017, issued a decision denying Plaintiff's request for review, rendering the ALJ's decision the Commissioner's final decision. AR at 1-6. On January 23, 2018, Plaintiff commenced the instant action seeking judicial review of the ALJ's decision.

On August 13, 2018, Plaintiff filed a motion for judgment on the pleadings (Dkt. 13) ("Plaintiff's Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. 13-1) ("Plaintiff's Memorandum"). On November 13, 2018, Defendant filed a motion for judgment on the pleadings (Dkt. 19) ("Defendant's Motion"), attaching Commissioner's Brief in Support of the Defendant's Motion for Judgment on the Pleadings and in Response to Plaintiff's Brief Pursuant to Local Standing Order on Social Security Cases (Dkt. 19-1) ("Defendant's Memorandum"). On December 3, 2018, Plaintiff filed Plaintiff's Response to the Commissioner's Brief in Support and in Further Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. 20) ("Plaintiff's Reply"). Oral argument was deemed unnecessary.

3

Based on the following, Plaintiff's Motion is DENIED; Defendant's Motion is GRANTED.

## **FACTS**[3]

Plaintiff Jean Coleman ("Plaintiff" or "Coleman"), born September 20, 1968, was 45 years old as of March 11, 2014, her alleged disability onset date ("DOD"), and 48 as of the April 7, 2017 administrative hearing. AR at 32, 212. Plaintiff graduated from college with a bachelor's degree in Human Resource Management, AR at 32, 216, had previous work experience as a human resources assistant and as a cashier, AR at 44, 216, 310, and continued to work, part-time, as a cashier through the date of administrative hearing.[4] AR at 39, 217. As of the date of the administrative hearing, Plaintiff lived with her elderly mother, who performed most of the household chores, including shoveling snow, AR at 46, 57, 500, and occasionally socialized with friends, including a new boyfriend, AR at 46, and enjoyed shopping, watching television, and reading. AR at 229. Plaintiff had a driver's license and would drive herself and her mother to shop and to senior activities which Plaintiff encouraged her mother to attend. AR at 46-47, 228. Plaintiff assisted her mother with grooming, making appointments, and also takes care of her pet cats. AR at 226. Plaintiff received much of her regular medical care, including physical and psychological, through Olean Medical Group ("OMG"), and attended physical therapy at Olean Physical Therapy Professionals, PLLC.

---

[3] In the interest of judicial economy, recitation of the Facts is limited to only those facts necessary for determining the pending motions for judgment on the pleadings.
[4] It is undisputed that although Plaintiff continues to work for a few hours a week, her earnings consistently are below the monthly threshold for disability benefits eligibility. *See* AR at 12 (ALJ commenting "[a] quarterly breakdown of [Plaintiff's] earnings shows that income has consistently fallen well below the threshold level for substantial gainful activity in the period after the alleged onset date.").

## DISCUSSION

**1. Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A). A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error. 42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence. *Id.* "Congress has instructed . . . that the factual findings of the Secretary,[5] if supported by substantial

---

[5] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

**2.     Disability Determination**

The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982). If the claimant meets the criteria at any of the five steps, the inquiry ceases and the claimant is not eligible for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920. The first step is to determine whether the applicant is engaged in substantial gainful activity ("SGA") during the period for which the benefits are claimed. 20 C.F.R. §§ 404.1520(b) and 416.920(b). The second step is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations. 20 C.F.R. §§ 404.1520(c) and 416.920(c). Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement,[6] there is a presumption of inability to perform SGA and the claimant is deemed disabled regardless of age, education, or work experience. 42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d). As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by

---

[6] The duration requirement mandates the impairment must last or be expected to last for at least a continuous twelve-month period. 20 C.F.R. §§ 404.1509 and 416.909.

6

the applicant's collective impairments, *see* 20 C.F.R. 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW"). 20 C.F.R. §§ 404.1520(e) and 416.920(e). If the applicant remains capable of performing PRW, disability benefits will be denied, *id.*, but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c). The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).

In the instant case, the ALJ found Plaintiff meets the disability insured status requirements through June 30, 2020, AR at 12, has not engaged in SGA since March 11, 2014, her alleged disability onset date, *id.*, suffers from the severe impairments of degenerative disc disease, obesity, an affective disorder, and an anxiety disorder, *id.* at 12-13, but that other medical conditions for which Plaintiff was treated, including diabetes mellitus, a seizure disorder, and migraine headaches caused no more than a minimal degree of limitation in Plaintiff's ability to work and, thus, by definition are not severe. AR at 13. Nor does Plaintiff have an impairment or combination of impairments meeting or medically equal to the severity of any listed impairment in 20 C.F.R. Part 404, Subpt. P, App. 1, *id.* at 13-15, but retains the RFC to perform sedentary work limited to occasionally climbing, balancing, stooping, kneeling, crouching, crawling,

operating foot controls with her left lower extremity, and reaching overhead with her right upper extremity, and limited to simple, routine and repetitive tasks, with only occasional decision-making and workplace changes. AR at 15-22. The ALJ further found Plaintiff unable to perform any past relevant work, AR at 22, yet given Plaintiff, at age 45 as of the alleged disability onset date, was considered a younger individual, her education and ability to communicate in English, with no transferable skills from her past work experience and RFC, jobs exist in significant numbers in the national economy that Plaintiff can perform including representative occupations such as document preparer, table worker, and inspector, such that Plaintiff is not disabled as defined under the Act. *Id.* at 22-23.

Plaintiff does not contest the ALJ's findings with regard to the first three steps of the five-step analysis, but argues the ALJ erred at step four in evaluating Plaintiff's RFC by improperly discounting some treating source opinions in favor of consultative source opinions, Plaintiff's Memorandum at 17-24, the RFC failed to account for Plaintiff's stress-related limitations, *id.* at 24-27, and failed to conduct a proper credibility analysis. *Id.* at 27-30. Defendant counters that the ALJ considered the opinion evidence in accordance with the regulations, Defendant's Memorandum at 19-23, and properly considered all of Plaintiff's symptoms and alleged limitations, *id.* at 23-27. In reply, Plaintiff essentially reiterates her same arguments asserted in support of Plaintiff's Motion.

In arguing the ALJ erred in assessing her RFC at step four, Plaintiff takes particular issue with the ALJ's limited consideration of Plaintiff's mental health providers

Syed Shamsi, M.D. ("Dr. Shamsi"), Joyce Bilotta-Kline, T.A.A.,[7] ("Bilotta-Kline"), and Joseph H. Ramsey, MSW ("Ramsey"), while according greater consideration to the opinion of one-time consultative examiner Michael P. Santa Maria, Ph.D. ("Dr. Santa Maria"), and partial consideration to consultative examiners and state assigned review physicians. Plaintiff's Memorandum at 17-24, Plaintiff's Reply at 1-9. Defendant argues neither Bilotta-Kline nor Ramsey qualifies under the regulations as an "acceptable medical source," Defendant's Memorandum at 20, the administrative record does not establish a regular treating relationship with Ramsey, *id.* at 20-21, the opinions of Bilotta-Kline and Ramsey are not well-supported and are inconsistent with the record as a whole, *id.* at 21, and Dr. Shamsi, although a treating source under the regulations, never identified any specific functions of Plaintiff that were impaired and also limited his assessment that Plaintiff was unable to work to a four-month period which is insufficient to establish disability. *Id.* at 22-23. In contrast, Dr. Santa Maria's consultative opinion is consistent with the record, including the consultative assessment of E. Kamin, Ph.D. ("Dr. Kamin"), which supports the ALJ's decision. *Id.* at 21-23.

Preliminarily, "[a]ccording to Social Security Ruling 06-3p, 'only 'acceptable medical sources' can be treating sources . . . whose medical opinions may be entitled to controlling weight.'" *Genier v. Astrue*, 298 Fed.Appx. 105, at 108 (2d Cir. Nov. 5, 2008) (quoting SSR 06-03p,[8] 2006 WL 2329939, at *1-2 (Aug. 9, 2006)). As relevant here, an "acceptable medical source" includes a licensed physician or a licensed psychologist.

---

[7] For what T.A.A. is an abbreviation is not in the record, but it is undisputed that Bilotta-Kline was somehow involved in Plaintiff's mental health counseling.
[8] "SSR" is the acronym for "Social Security Rulings" which are agency rulings "published under the authority of the Commissioner of Social Security and are binding on all components of the Administration. Such rulings represent precedent final opinions and orders and statements of policy and interpretations that [the SSA] ha[s] adopted." 20 C.F.R. § 402.35(b)(1).

20 C.F.R. § 404.1502(a)(1) and (2); SSR 06-3p, 2006 WL 2329939, at *1-2. Accordingly, because neither Bilotta-Kline nor Ramsey is a licensed physician or licensed psychologist, neither qualifies as an acceptable medical source under the regulations, and their opinions "do not demand the same deference of those of a treating physician." *Genier*, 298 Fed.Appx. at 108 (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1039 n. 2 (2d Cir. 1983)). Rather, Bilotta-Kline and Ramsey are considered "other medical sources," whose information "cannot establish the existence of a medically determinable impairment" but which "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-3p, 2006 WL 2329939, at *2.

With regard to Billota-Kline, the administrative record contains a progress note dated December 14, 2016, concerning an Individual Recovery Plan Bilotta-Kline established December 9, 2015 for Plaintiff to complete by January 31, 2016, AR at 766-773, and a Work Activity Questionnaire for Treatment Providers ("Work Activity Questionnaire") dated February 17, 2017. AR at 710-12. Although the Individual Recovery Plan was "continued" on December 14, 2016, it provides little, if any, assessment of Plaintiff's ability to work and does not reflect any changes that were made to the plan. AR at 766-73. On the Work Activity Questionnaire Bilotta-Kline indicated that Plaintiff could then perform work activity limited to 5 hours a week by her questionable insight and judgment, indecisiveness, and distractibility, needed restricted access to merchandise because of her hoarding and impulse shopping, but that Plaintiff's mental restrictions would be removed if Plaintiff developed better coping skills,

AR at 710-11, but does not specify the source of such assessments.  Bilotta-Kline's opinion thus was not entitled to more than the little weight the ALJ gave it.

Ramsey is a social worker with Cattaraugus County Department of Community Services who, on March 27, 2015, completed a Mental Residual Functional Capacity Assessment of Plaintiff ("Mental RFC Assessment"), on which Plaintiff is diagnosed with bipolar II, borderline personality features, seizure disorder, herpes, hypercholesteremia (high cholesterol), diabetes type II, moderate family and social problems, and a Global Assessment of Functioning ("GAF") Scale[9] of 62 to 65.  AR at 694-97.  Of the 21 individual categories of work activities Ramsey assessed, Plaintiff was noted as markedly limited in only two, both related to sustaining concentration and persistence, and moderately limited in only four, including understanding and remembering detailed instructions, maintaining a schedule, attendance, punctuality in the workplace, completing a normal workday and workweek, and tolerating normal stress levels, and being either mildly or not at all limited in the remaining 16 categories, and Ramsey opined Plaintiff would miss three to five days of work each month, but should continue working part-time, and could manage her funds.  AR at 695-97.  Not only is Ramsey's assessment of Plaintiff's inability to work full-time inconsistent with the assessment that in 16 of the work-related categories he found Plaintiff either mildly or not at all impaired,

---

[9] The GAF Scale was "promulgated by the American Psychiatric Association to assist 'in tracking the clinical progress of individuals [with psychiatric problems] in global terms.'"  *Kohler v. Astrue*, 546 F.3d 260, 262 n. 1 (2d Cir. 2008) (alterations in original) (quoting Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders ("DSM"), 32 (4th ed. 2000).  Although GAF scores are intended only to make treatment decisions, rather than disability determinations, and are considered relevant to the ALJ's RFC determination, *Gonzalez v. Colvin*, 2016 WL 4009532, at *5 (W.D.N.Y July 27, 2016), the GAF scale is "no longer in use," *Kaczowski v. Colvin*, 2016 WL 5922768, at * 12 n.5 (S.D.N.Y. Oct. 11, 2016) (citing DSM (5th ed. 2013), yet "the Commissioner may still consider GAF scores as one factor among others."  *Pena Lebron v. Comm'r of Soc. Sec.*, 2019 WL 1429558, at * 3 n. 3 (S.D.N.Y. Mar. 29, 2019) (citation and quotation marks omitted).

but the GAF scores of 62 to 65 are consistent with only mild to moderate deficits, and the record is devoid of any treatment notes from Ramsey rendering it impossible to ascertain the treating relationship between Plaintiff and Ramsey. Accordingly, the ALJ did not err in giving little weight to Ramsey's opinion.

Dr. Shamsi treated Plaintiff for a psychiatric hospitalization from February 11, 2016 till February 18, 2016, indicated Plaintiff was unable to work because of her illness, but his opinion is unsupported by any specific functional findings. AR at 742-44. Moreover, Dr. Shamsi specifically limited Plaintiff's work restriction to a four-month period from February 8, 2016 to June 1, 2016, AR at 742, which does not establish an inability to perform substantial gainful activity for the threshold 12 months set forth under the regulations. *See* 20 C.F.R. § 404.1505(a) ("The law defines disability as the inability to do any substantial gainful activity by any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."). Despite being from an acceptable medical source, Dr. Shamsi's opinion does not establish disability.

Further, Dr. Santa Maria, a neuropsychologist, is an acceptable medical source as defined under 20 C.F.R. § 404.1502(a)(2), who despite not having a treating relationship with Plaintiff, performed a detailed neuropsychological examination the results of which were "relatively unremarkable." AR at 346-49. In particular, Plaintiff demonstrated normal range general intellectual abilities, normal to high normal on most memory measures, and on attention and processing speed, although Plaintiff did demonstrate a slowed basic reaction time, relative weakness on basic visual attention, and "a couple of scattered weaknesses on memory assessment," albeit "in the context

12

of generally normal to high normal memory functioning." AR at 351. Dr. Santa Maria interpreted that "[t]his subtle pattern potentially reflects minor mood-related variability in attention," *id.*, and opined that the examination showed no evidence of any cognitive or psychological condition interfering with Plaintiff's ability to handle "her current work duties on a part time or full time basis," although Plaintiff's "mood symptoms and to a lesser extent some personality traits . . . may adversely impact [Plaintiff] reliably maintaining adequate performance in other more demanding work roles." *Id.* Significantly, the data collected by Dr. Santa Maria in connection with the neuropsychological examination of Plaintiff is largely consistent with Ramsey's findings on the Mental RFC Assessment. Relevantly, the opinion of a consultative examiner assessed after examining a claimant can be considered substantial evidence on which the ALJ may rely in assessing a claimant's RFC. *See Sloan v. Colvin*, 244 F.Supp.3d 315, 324-26 (W.D.N.Y. 2014) (noting "consultative physician's opinion may serve as substantial evidence" and finding no error in ALJ's reliance on consultative examining physician's opinion in assessing the claimant's RFC). Accordingly, the ALJ did not err in giving Dr. Santa Maria's opinion greater weight than the opinions of Dr. Shamsi, Bilotta-Kline and Ramsey.

Similarly, Dr. Kamin, the state agency psychology consultant, found Plaintiff with severe affective disorders, but further found such disorders posed only mild restrictions to Plaintiff's activities of daily living, and moderate difficulties to social functioning, and maintaining concentration, persistence or pace. AR at 70. Accordingly, the ALJ's reliance on Dr. Kamin's assessment was not error. To summarize, the ALJ's consideration of the medical opinions in the record was not in error.

13

Insofar as Plaintiff argues the RFC fails to account for Plaintiff's stress-related limitations, including Plaintiff's inability to handle and manage the stress of even an unskilled job, AR at 24-27, the record is devoid of evidence establishing Plaintiff had any stress-related limitations. Even in his Mental RFC Assessment of Plaintiff, Ramsey reports only moderate limitation in Plaintiff's ability to tolerate normal stress levels, and attributes Plaintiff's inability to work more than part time to frustration and pain caused by Plaintiff's diabetic neuropathy. AR at 694-96. Further, although Ramsey assessed Plaintiff with an inability to carry out instructions beyond one or two steps, in assessing Plaintiff's RFC, the ALJ restricted Plaintiff to simple, routine and repetitive tasks, with only occasional decision-making and occasional workplace changes, AR at 15, thus accounting for the impact of Plaintiff's stress on her inability to follow detailed instructions, and the ALJ therefore sufficiently accounted for Plaintiff's stress-related limitations.

Nor did the ALJ err in assessing Plaintiff's credibility as Plaintiff argues. Plaintiff's Memorandum at 27-30. The ALJ is not required to accept without question the claimant's subjective complaints but, rather, "may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). The assessment of a disability claimant's credibility is for the ALJ and will be upheld where supported by other evidence in the record. *Campbell v. Astrue*, 465 Fed.Appx. 4, 6 (2d Cir. Jan. 6, 2012). Here, the ALJ's assessment that Plaintiff's reported symptoms were not entirely consistent with the evidence is supported by the record. In particular, although both Bilotta-Kline and Ramsey opined Plaintiff is capable of working only 5 hours a week,

with Ramsey further indicating Plaintiff would be expected to be absent three to five days during the month, nothing in the record even remotely suggests Plaintiff missed working on the days she was assigned to work the limited hours.  Nor does Plaintiff explain why, despite her claims of constant fatigue, she is able to get to work when scheduled, and the record is devoid of any reports that Plaintiff ever left work because of fatigue.  Significantly, "[a] lack of supporting evidence on a matter for which the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits." *Barry v. Colvin*, 606 Fed.Appx. 621, 622 (2d Cir. Apr. 21, 2015).  Accordingly, the ALJ's finding that Plaintiff's self-reported symptoms are not entirely consistent with the objective medical findings is supported by substantial evidence in the record.

The ALJ's assessment of Plaintiff's RFC at step four thus is supported by substantial evidence in the record.

## **CONCLUSION**

Based on the foregoing, Plaintiff's Motion (Dkt. 13) is DENIED; Defendant's Motion (Dkt. 19) is GRANTED.  The Clerk of Court is directed to close the file.
SO ORDERED.

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:	June 19th, 2019
	Buffalo, New York